IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOARDAKAN RESTAURANT LLC, et al., | |
| Plaintiffs, | CIVIL ACTION |
| v. | NO. 11-5676 |
| ATLANTIC PIER ASSOCIATES, LLC, et al., | |
| Defendants. | |

## OPINION

**Slomsky, J.**                                                **October 2, 2013**

### TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 1

III.  DEFENDANTS' MOTION FOR RECONSIDERATION ...................................... 6

      A. Standard of Review……………………………………………………………6

      B. The Motion For Reconsideration Will Be Denied Because Judge Sheppard
         Did Not Commit A Clear Error of Law Nor Did Defendants Suffer A Manifest
         Injustice…………………………………………………………………….....7

            1. Judge Sheppard's Decision Was Within His Discretion.................................. 8

            2. Judge Sheppard Applied The Proper Legal Standard…………………………9

            3. The Doctrines of Collateral Estoppel and Lis Pendens Did Not
               Bar Judge Sheppard From Striking The Discontinuance…………...………...10

IV.   DEFENDANTS' MOTIONS TO DISMISS WILL BE DENIED ........................ 12

      A. Standard Of Review……………………………………………………………12

      B. The Motions To Dismiss Will Be Denied Because Plaintiffs' Claims Are
         Sufficiently Pled, Timely, and Not Barred By Res Judicata…………………………13

1. Plaintiffs' Claims Are Timely……………………………………………………14

2. Plaintiffs' Claims Are Not Barred By Res Judicata…………………………..20

3. Plaintiffs' Claims Are Sufficient To State Causes of Action
   Against Defendants…………………………………………........................21

V.   CONCLUSION .................................................................................................. 24

## I.      INTRODUCTION

Pending before the Court are Defendants' Joint Motion for Reconsideration and Motions to Dismiss. (Doc. Nos. 12, 17, 18, 19, 20, 22.)  Defendants ask this Court to reconsider an Order entered by the late Honorable Albert W. Sheppard, Jr. of the Philadelphia Court of Common Pleas.  Judge Sheppard's Order struck a discontinuance filed by Plaintiffs and reinstated their case.  Defendants contend that if the motion for reconsideration is denied, then the Amended Complaint should be dismissed.  Plaintiffs submit that the case should be allowed to proceed. For reasons that follow, the Court denies Defendants' Joint Motion for Reconsideration and Motions to Dismiss.  The case will go forward.

## II.     BACKGROUND

At the heart of this case lies a dispute over a lease.  Plaintiffs Boardakan Restaurant, LLC and Oceanental Restaurant, LLC ("Plaintiffs") own two upscale restaurants in "The Pier at Ceasar's" ("The Pier") in Atlantic City, New Jersey.  Plaintiffs lease space from Defendant Atlantic Pier Associates, LLC ("APA"), a limited liability company owned and operated by the Gordon Group Defendants[1] and the Taubman Defendants.[2]  Plaintiffs originally entered into lease agreements with Defendants in 2004 when The Pier was still undergoing construction with a scheduled opening date of March 2006.  Under the terms of the leases, if The Pier did not open on time then Plaintiffs' leases would automatically become null and void.  (Doc. No. 20-1 at ¶ 51.)

In 2004, two other upscale restaurants, RumJungle and English Is Italian, also entered into lease agreements with Defendants.  It soon became apparent that The Pier would open later

---

[1]  The "Gordon Group Defendants" are Defendants Gordon Group Holdings, LLC, Pier Developers, Inc., Sheldon Gordon, Scott Gordon, and Peter Fine.

[2]  The "Taubman Defendants" are Defendants Taubman Centers, Inc., Taubman Realty Group, LP, Taubman Realty Group The Pier, LLC, and the Taubman Company, LLC.

than scheduled.  Knowing they would be able to walk away from the project, Plaintiffs sent a

letter to Defendants asking for further assurances.  (Id. at ¶85.)  Specifically, Plaintiffs asked if

RumJungle and English Is Italian maintained binding leases with Defendants.  Plaintiffs then met

with Defendant Peter Fine, who informed them that RumJungle and English Is Italian would

"definitely" be opening at The Pier, when in fact they had both already terminated their leases.

(Id. at ¶ 103.)  Plaintiffs allege that Defendants sent emails, letters, and press releases, all

confirming the participation of RumJungle and English Is Italian.  (Id. at ¶ ¶ 96, 99, 109.)

Plaintiffs argue that Defendants conspired to keep them in the dark, knowing that they would not

continue with the project without the other restaurants on board.   One month before their lease

was set to expire, Plaintiffs entered into amended lease agreements with Defendants, investing

substantial sums of money in the properties.  Plaintiffs claim that they would not have made the

investment but-for Defendants' misrepresentations.  (Id.)

On June 25, 2008, Plaintiffs filed a Writ of Summons in the Court of Common Pleas of

Philadelphia County alleging fraud against APA and two of its members, Gordon Group

Holdings, LLC and Taubman Centers, Inc. ("Boardakan I")[3]  Plaintiffs also named several "John

Doe" entities and individuals as defendants in the Writ (Doc. No. 17-11 at 5-6).  Plaintiffs then

began pre-Complaint discovery.  (Doc. 12 at 12.)

On July 23, 2008, Defendants removed Boardakan I to the United States District Court

for the Eastern District of Pennsylvania.  (Doc. No. 53 at 7.)  Thereafter, Plaintiffs moved to have

the case remanded back to state court on the grounds that a Writ of Summons is not a removable

pleading under 28 U.S.C. § 1446.  (Id.)  In September 2008, during the pendency of Boardakan I

---

[3] The parties refer to the case filed in the Court of Common Pleas as "Boardakan I."  Two other
related cases were filed in federal court and are referred to in this Opinion as "Boardakan II"
and "Boardakan III."

in federal court, one of the Defendants in Boardakan I filed a separate suit in federal court for unpaid rent against Plaintiffs. ("Boardakan II") (Doc. No. 53 at 7.)

On September 19, 2008, the Honorable Eduardo C. Robreno of this Court held a hearing on the Motion to Remand in Boardakan I. (Doc. 53 at 8.) Plaintiffs allege that Judge Robreno made it clear that he intended to remand Boardakan I to the Court of Common Pleas and suggested that if the parties wished to consolidate the case with Boardakan II, then they must agree on an efficient way to do so. (Doc. No. 53 at 8.) Plaintiffs further allege that in response to this suggestion they came to an oral agreement with Taubman Defendants' counsel, Jeffrey Meyers. (Doc. No. 53 at 8–9.) Under the terms of this agreement, Plaintiffs would complete their pre-Complaint discovery in Boardakan I after it was remanded to the Court of Common Pleas, then file a complaint in federal court covering the allegations relating to the Writ and have it consolidated with Boardakan II. (Doc. No. 53 at 9.) On September 24, 2008, Judge Robreno remanded Boardakan I to the Court of Common Pleas. (Doc. No. 53 at 9.)

On April 16, 2009, pursuant to the alleged agreement between counsel, Plaintiffs filed another action in the Eastern District of Pennsylvania ("Boardakan III"). In this new case, Plaintiffs asserted claims of fraud, negligent misrepresentation, civil conspiracy, and promissory estoppel against APA and all Gordon Group and Taubman Defendants.[4] The following day, Plaintiffs voluntarily discontinued Boardakan I in the Court of Common Pleas and Judge Robreno entered an Order consolidating Boardakan III with Boardakan II. (Doc. Nos. 12 at 12–13; 53 at 9.) After these cases were consolidated, Taubman Defendants terminated Jeffrey Meyers as their counsel. (Doc. No. 53 at 19.)

---

[4] Taubman Company was not a named defendant in the original Boardakan III Complaint, but was added on September 13, 2010, after United States Magistrate Judge Angell granted Plaintiffs leave to amend their Complaint under Fed. R. Civ. P. 15(a)(2) and 15(c).

In September 2009, Judge Robeno recused himself from the case, and the action was assigned to the late Honorable Louis H. Pollak.  (Doc. No. 53 at 10.)  On September 23, 2010, Taubman Defendants filed a Motion to Dismiss the Complaint filed in Boardakan III, arguing that Plaintiffs had run afoul of the statute of limitations when they discontinued Boardakan I. Specifically, Defendants argued that the Writ of Summons did not toll the statute of limitations on the claims raised in Boardakan III.  (Doc. No. 53 at 11.)  On July 27, 2011, Judge Pollak issued an Opinion and Order granting Taubman Defendants' Motion to Dismiss on the statute of limitations ground.  (Doc. No. 53 at 11.)  In the Opinion, Judge Pollak explained:  "[I]t is undisputed that, if the Plaintiffs had filed a complaint in the state court action, and if the defendants had successfully removed that case to federal court, the claims would not be barred by the statute of limitations."  (Doc. No. 53 at 11.)

On August 4, 2011, Plaintiffs filed a Petition to Strike Off the Discontinuance in Boardakan I in the Court of Common Pleas.  (Doc. No. 53-1.)  Plaintiffs argued that they had filed the discontinuance based on an agreement with Taubman Defendants' former counsel, Jeffrey Meyers, which they had reached after the September 19, 2008 hearing before Judge Robreno and with Judge Robreno's endorsement.  (Doc. 12-2 at 8–10.)  On August 16, 2011, Defendants filed an Answer and Memorandum in opposition.  (Doc. No. 12 at 17.)  Two days later, the late Honorable Albert W. Sheppard Jr. of the Court of Common Pleas heard oral argument on Plaintiffs' Petition.  (Doc. No. 53 at 12.)  On August 22, 2011, Judge Sheppard granted Plaintiffs' petition and entered the following Order:

> AND NOW, this 22nd day of August, 2011, upon consideration of the Joinder in Plaintiffs' Petition to Strike Off the May 4, 2009 Discontinuance entered by this Honorable Court, to prevent manifest prejudice and injustice to the Plaintiffs, pursuant to Pennsylvania Rule of Civil Procedure 229(c), it is ORDERED and DECREED that the said Petition is GRANTED.  The Discontinuance dated May 4, 2009 is hereby stricken and vacated and the Writ of Summons is reinstated as if

it had never been discontinued.  This case is listed for a status conference on Monday, September 19, 2011 at 10:00 a.m. in Courtroom 513, City Hall.

BY THE COURT:  Sheppard, J.

(Doc. No. 12-5.)

That same day, Plaintiffs filed a Complaint in state court alleging fraud, negligent misrepresentation, civil conspiracy, promissory estoppel, and an alter ego violation against APA, all Taubman Defendants, and Gordon Group Holdings.  On September 9, 2011, Taubman Defendants removed this case (Boardakan I) to the Eastern District of Pennsylvania, and the case was assigned to Judge Pollak.  On September 16, 2011, Taubman Defendants filed a Motion for Reconsideration of Plaintiffs' Petition to Strike Off the Discontinuance.[5]  (Doc. No. 12.)

On September 19, 2011, Plaintiffs filed an Amended Complaint, adding Pier Developers, Inc. (of the Gordon Group Defendants), Gordon Group Holdings' owner, Sheldon Gordon, and two of its employees, Peter J. Fine and Scott Gordon, as defendants.  (Doc. No. 13.)   On September 26, 2011, Taubman Defendants filed a Motion to Dismiss the Amended Complaint.  (Doc. No. 17.)  On September 28, 2011, Defendant APA and the Gordon Group Defendants joined in the Taubman Defendants' motion for reconsideration.  (Doc. Nos. 18, 19.)  On October 3, 2011, Gordon Group Defendants filed a Motion to Dismiss the Amended Complaint.   (Doc. No. 20.)  The next day, APA also filed a Motion to Dismiss.  (Doc. No. 22.)  On May 15, 2012, after Judge Pollak passed away, the case was assigned to this Court.  On February 1, 2013, this

---

[5]  After a case is removed to federal court, the orders entered by a state court judge are adopted as the orders of the newly-assigned federal judge.

Court held a hearing on all Motions.  The parties were permitted to file supplemental memorandums of law.[6]  For reasons that follow, the Motions will be denied.

## III.     DEFENDANTS' MOTION FOR RECONSIDERATION

### A.     Standard of Review

The Third Circuit has held that motions for reconsideration are reserved "to correct manifest errors of law or fact or to present newly discovered evidence."  Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).  "Generally, a motion for reconsideration will only be granted on one of the following three grounds: '1) there has been an intervening change in controlling law; 2) new evidence, which was not previously available, has become available; or 3) it is necessary to correct a clear error of law or to prevent manifest injustice.'"  Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 399 (E.D. Pa. 2002) (quoting Smith v. City of Chester, 155 F.R.D. 95, 96–97 (E.D. Pa. 1994)).  "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly."  Continental Casualty Co. v. Diversified Indus., 884 F. Supp. 937, 943 (E.D. Pa. 1995).

Indeed, reconsideration is inappropriate where the moving party essentially "ask(s) the Court to rethink what [it] had already thought through — rightly or wrongly."  Glendon Energy Co. v. Bor. of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (citation and internal quotation

---

[6] On September 25, 2012, Plaintiffs filed a Memorandum of Law in Opposition to Defendants' Motions to Dismiss and a separate Memorandum of Law in Opposition to the Motion for Reconsideration.  (Doc. Nos. 52, 53.)  On October 16, 2012, the Gordon Group Defendants filed a Reply to Plaintiffs' Response to the Motion to Dismiss.  (Doc. No. 56.)  On October 23, 2012, Defendants jointly filed a Reply in further support of the Motion for Reconsideration.  (Doc. No. 58.)  On the same day, Taubman Defendants filed their Reply to Plaintiffs' Response to the Motion to Dismiss.  (Doc. No. 59.)  On April 3, 2013, Taubman Defendants and Gordon Group Defendants filed Supplemental Briefs in Further Support of the Motions, and Plaintiffs filed a Supplemental Brief in Further Opposition to the Motions.  (Doc. Nos. 73, 74, 75, 76, 77.)

marks omitted).  A motion for reconsideration "addresses only factual and legal matters that the court may have overlooked."  Id.  "Mere dissatisfaction with the Court's ruling is not a proper basis for reconsideration."  Liverman v. Gubernik, No. 10-1161, 2010 U.S. Dist. LEXIS 11052, at *4 (E.D. Pa. Oct. 15, 2010).

> **B.    The Motion For Reconsideration Will Be Denied Because Judge Sheppard Did Not Commit A Clear Error of Law Nor Did Defendants Suffer A Manifest Injustice**

Here, the first two grounds for reconsideration of Judge Sheppard's Order striking the discontinuance and reinstating the Writ of Summons— an intervening change in controlling law and the surfacing of new evidence — are not applicable.  Rather, Defendants ask this Court to grant their Motion for Reconsideration to "correct a clear error of law or to prevent manifest injustice."  (Doc. No. 12 at 3) see Blue Mountain Mushroom, 246 F. Supp. 2d at 399.  The Motion will be denied because Judge Sheppard did not commit a clear error of law, nor did Defendants suffer a manifest injustice.

Pennsylvania law allows a court, "upon petition and after notice, [to] strike off a discontinuance in order to protect the rights of any party from unreasonable inconvenience, vexation, harassment, expense, or prejudice."  Pa. R. Civ. P. 229.  Defendants argue that Judge Sheppard made a clear error of law in striking Plaintiffs' discontinuance under this provision, resulting in manifest prejudice to Defendants.  (Doc. No. 12-5 at 2.)  Specifically, Defendants argue that Judge Sheppard (1) exceeded his discretion when granting the petition (Doc. No. 12 at 19–21); (2) applied the wrong legal standard in his Order (Doc. No 78 at 7–11); (3) and was barred from granting the petition by the doctrines of collateral estoppel and lis pendens.  (Doc. No. 12 at 23–26.)  Each argument will be addressed in turn.

###### 1.      Judge Sheppard's Decision Was Within His Discretion

To begin, "[t]he authority to strike off a discontinuance is vested in the sound discretion of the trial court, and [it] will not [be] reverse[d] absent an abuse of that discretion." Hopewell v. Hendrie, 562 A.2d 899 (Pa. Super. 1989), alloc. den., 577 A.2d 890 (Pa. 1990). "The trial court's discretion, however, is not unlimited. [Rule 229(c) of the Pennsylvania Rules of Civil Procedure] expressly provides for the striking of a discontinuance when necessary to protect either party from unreasonable inconvenience, vexation, harassment, expense or prejudice." Nastasiak v. Scoville Enters., Ltd., 618 A.2d 471, 472 (Pa. Super. Ct. 1993) (citing Hopewell, 562 A.2d at 900).

Defendants argue that a court is not permitted to reinstate an action if the statute of limitations had lapsed before a plaintiff files their petition to strike off the discontinuance. (Doc. No. 12 at 19–21.) In support of this argument, Defendants cite Hudson v. Cohen, 47 Pa. D. & C.2d 510 (Ct. of Com. Pl. 1969). The plaintiff in Hudson discontinued his state court claim in order to file a new action in District Court. (Id. at 510.) However, the federal court action was later dismissed as time-barred. (Id.) Plaintiffs then moved in state court to strike the discontinuance. The Court of Common Pleas, the state court tribunal, refused to strike the state court discontinuance for two reasons. First, the statute of limitations had run, and second, the discontinuance did not unreasonably prejudice the plaintiff. (Id. at 510–12.) Hudson is distinguishable, however, because in that case the plaintiff "furnished no valid reason in support of his petition to strike off the discontinuance" and did not show unreasonable prejudice. (Id. at 511.) Here, Plaintiffs explained in their Petition how they would suffer unreasonable prejudice, and would be deprived of their day in court if the discontinuance were not stricken. (See Doc. No. 12-2 at 22-23.) Judge Sheppard properly exercised his discretion by deciding that the

discontinuance should be stricken to prevent unreasonable prejudice to Plaintiffs after considering the parties' arguments in their pleadings and at the August 18, 2011 hearing.

Moreover, <u>Hudson</u> does not impose a bright line rule that a court <u>must</u> deny a petition to strike a discontinuance if the underlying statute of limitations has expired.  In <u>Hudson</u>, the court simply used its discretion and denied the petition to strike after the plaintiff failed to show unreasonable prejudice.  <u>Hudson</u>, 47 Pa. D. & C.2d at 512.  Indeed, Plaintiffs cite a case where a petition to strike was granted in spite of the fact that the statute of limitations had expired.  <u>See</u> <u>Hopewell v. Hendrie,</u> 562 A.2d 899, 901 (Pa. Super. 1989) (noting that "the prejudice to appellant is obvious [because] [u]nless the mistaken discontinuance is stricken, appellant is out of court because the statute of limitations on her cause of action has expired.").  <u>Hopewell</u> is a decision of the Superior Court of Pennsylvania and is more persuasive authority to be applied here.  Accordingly, Defendants' first argument does not warrant reconsideration.

### 2. Judge Sheppard Applied The Proper Legal Standard

Defendants also aver that Judge Sheppard applied the wrong legal standard in exercising his discretion to strike the discontinuance because he referred to "manifest prejudice" instead of "unreasonable prejudice" in his Order.  (Doc. No. 53-8 at 2.)  Defendants argue that this mistake was a clear error of law that warrants reconsideration of the Order.

However, Judge Sheppard's Order states that Plaintiffs' petition was granted "<u>pursuant to</u> Pennsylvania Rule of Civil Procedure 229(c)."  (<u>Id.</u>) (emphasis added)  "Pursuant to" is defined by Webster's Dictionary as "in conformity with" or "according to."  <u>Webster's New Collegiate Dictionary</u> 957 (9th ed. 1988).  Thus, the language used in the Order shows that Judge Sheppard considered all of the requirements of Rule 229(c) and granted the petition "in conformity with" the Rule's legal standards.

Additionally, the record before this Court shows that Judge Sheppard considered arguments from counsel on the proper legal standard to apply and how to apply it.  In Plaintiffs' Motion to Strike the Discontinuance, the standard set forth in Pa. R. Civ. P. 229(c) was clearly presented to Judge Sheppard.  (Doc. No. 12-2 at 20–21.)  At the August 18, 2011 hearing, counsel engaged in a vigorous discussion of Pa. R. Civ. P. 229(c), and the standard of "unreasonable prejudice" was explained to Judge Sheppard a number of times.  (See Mot. Hr'g Tr. 72:5–7, 72:24–25, 76:12–14 Aug. 18, 2011.)  Also at the hearing, counsel presented the Judge with a long line of precedent in order to demonstrate how other courts have examined the issue of "unreasonable prejudice."  (See id. at 47:25– 58:9.)  Judge Sheppard's substitution of "manifest prejudice" in place of "unreasonable prejudice" in his Order is a harmless error.  This Court is convinced that Judge Sheppard considered the proper standard in exercising his discretion to strike the discontinuance.  There has been no clear error of law.

In addition, Defendants have not asserted that they will suffer manifest injustice if their Motion for Reconsideration is denied.  Instead, the majority of their arguments show a "mere dissatisfaction with the Court's ruling" and, as such, are "not a proper basis for reconsideration." Liverman v. Gubernik, No. 10-1161, 2010 U.S. Dist. LEXIS 11052, at *4 (E.D. Pa. Oct. 15, 2010).   Because Judge Sheppard applied the correct standard of law and there has been no showing of manifest injustice on the part of the Defendants, reconsideration is inappropriate as this Court would be merely "rethink[ing] what [it] ha[s] already thought through. . ." Glendon Energy Co., 836 F. Supp. at 1122.

### 3. The Doctrines of Collateral Estoppel and Lis Pendens Did Not Bar Judge Sheppard from Striking the Discontinuance

Under Pennsylvania law, a party is collaterally estopped from re-litigating an issue when: "1) the issues in the two actions are sufficiently similar and sufficiently material to justify

10

invoking the doctrine; 2) the issue was actually litigated in the first action; and 3) a final

judgment on the specific issue in question was issued in the first action." Pennsylvania v.

Holder, 805 A.2d 499, 502 (Pa. 2002).  Defendants contend that Plaintiffs were collaterally

estopped from arguing to Judge Sheppard that they filed the discontinuance with the

endorsement of the federal court based on a purported agreement with Defendants because they

made the same arguments on the Motion to Dismiss before Judge Pollak and lost.  (Doc. No. 12

at 24.)  This argument fails for two reasons.

     First, "[f]or collateral estoppel to apply, it must be shown, inter alia, that there was a final

judgment on the merits." Application of Pa. Turnpike Comm'n, 715 A.2d 1219, 1222 (Pa.

Cmmw. Ct. 1998).  An "on the merits" judgment is one based on substantive law, rather than

procedural rules.  Brown v. Cooney, 442 A.2d 324, 326 (Pa. Super. Ct. 1982).  Under

Pennsylvania law, a statute of limitations is a procedural rule that "extinguishes the remedy

rather than the cause of action." Westinghouse Elec. v. WCAB, 883 A.2d 579 n.11 (Pa. 2005).

Defendants prevailed on their Motion to Dismiss because Judge Pollak held that, due to the

discontinuance, the statute of limitations on Plaintiffs' cause of action had lapsed.[7]  (Doc. 53-6 at

35.)  Therefore, Judge Pollak did not make a final judgment "on the merits" on Plaintiffs' claims,

which is required for collateral estoppel to apply.

     Second, the issues before Judge Pollak and Judge Sheppard were not sufficiently similar

and therefore collateral estoppel cannot apply.  See Holder, 805 A.2d at 502.  The issue before

Judge Sheppard was whether he should exercise his discretion under Rule 229(c) of the

Pennsylvania Rules of Civil Procedure and strike Plaintiffs' voluntary discontinuance.   The issue

---

[7] This is the primary reason Plaintiffs moved in state court to strike the discontinuance.

before Judge Pollak was whether the discontinuance tolled the statute of limitations.  Since the issues were different, collateral estoppel cannot apply.

Similarly, Defendants' argument that Judge Sheppard was barred from striking the discontinuance under the doctrine of lis pendens fails because the threshold requirements to establish the defense of lis pendens are not met.  "To assert successfully the defense of lis pendens, i.e., the pendency of a prior action, it must be shown that the prior case is the same, the parties are the same, and the relief requested is the same."  Richner v. McCance, 13 A.3d 950, 957–58 (Pa. Super. Ct. 2011).  For the lis pendens defense to apply, all of these common law unities must be present on the date the motion is considered.  See Virginia Mansions Condominium Ass'n v. Lamp, 552 A.2d 275, 278 (Pa. Super. Ct. 1988).  When Judge Sheppard considered the petition to strike, the defendants in Judge Pollak's action (Boardakan III) and the defendants in Judge Sheppard's action (Boardakan I) were not the same.  The defendants in Boardakan III consisted of APA and all of the Gordon Group Defendants.  The defendants in Boardakan I consisted of APA, Gordon Group Holdings and Taubman Centers, Inc.  Since the parties were not the same, every requirement of the lis pendens defense was not met, and Judge Sheppard was not barred from reinstating the action.

Because Judge Sheppard did not commit a clear error of law or cause Defendants manifest injustice, the Motion for Reconsideration will be denied.

## IV.   DEFENDANTS' MOTIONS TO DISMISS WILL BE DENIED

### A.   Standard of Review

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "thread bare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see Bell Atl. Corp. v. Twombly, 550 U.S.

544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, n14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, n27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly, the Third Circuit has set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> [O]ur inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

### B. The Motions To Dismiss Will Be Denied Because Plaintiffs' Claims Are Sufficiently Pled, Timely, and Not Barred By Res Judicata

In addition to attacking the plausibility of Plaintiffs' claims, Defendants also raise the affirmative defenses of statute of limitations and res judicata. (Doc. Nos. 17 at 16-31, 20 at 8-10, 22 at 14-27.) In the Third Circuit, affirmative defenses may be raised at the motion to dismiss

stage if the defenses are "apparent on the face of the complaint." Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir.1978); see also Ball v. Famiglio, No. 12-1067, 2013 WL 4038562, at *7 n.16 (3d Cir. Aug, 9, 2013) (". . . a number of affirmative defenses that are not listed in Rule 12(b) could still be made by motion, provided that the basis of the defense was apparent on the face of the complaint. . . Williams v. Murdoch, 330 F.2d 745, 749 (3d Cir. 1964) (affirmative defense of res judicata may be raised by a motion to dismiss or by an answer)."). The Court will address the statute of limitations and res judicata defenses before examining the sufficiency of the Amended Complaint.

### 1.      Plaintiffs' Claims Are Timely

The Third Circuit "permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir.2002) (citing Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir.1975)).  From the face of the Complaint it must be clear that the claim is time-barred.  See Martin v. Ford Motor Co., 765 F. Supp. 2d 673, 686 (E.D. Pa. 2011).

The Amended Complaint alleges claims of fraud, negligent misrepresentation, and civil conspiracy.  (Doc. No. 13.)  Under Pennsylvania law, the statute of limitations for each of these claims is two years.[8]  For actions based in fraud, "the statute of limitations is tolled until the plaintiff learns or reasonably should have learned through the exercise of due diligence of the

---

[8]  See 42 Pa. Cons. Stat. Ann. § 5524(7) (implementing a two year limitation on any "action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud); Harry Miller Corp. v. Mancuso Chemicals Ltd., 469 F. Supp. 2d 303, 318 (E.D. Pa. 2007) ("The statute of limitations for civil conspiracy is identical to the statute of limitations for the underlying substantive offense. . .") (citing Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir.1974)).

existence of the claim." Beauty Time, Inc. v. Vu Skin Sys., Inc., 118 F.3d 140, 148 (3d Cir. 1997).

Here, Plaintiffs suspected fraudulent activities on or about January 2007.  (Doc. No. 17 at 42.)  On June 25, 2008, Plaintiffs filed their Writ of Summons against Defendants APA, Gordon Group Holdings, and Taubman Centers, Inc. well within the limitation period.  (Doc. No. 12 at 12.)  Still, these Defendants argue that Plaintiffs' claims are barred by the statute of limitations because Plaintiffs discontinued their action and did not reinstate it within the statutory period. The remaining Defendants Taubman Realty Group, Taubman Realty Group The Pier, Taubman Company, Pier Developers, Peter Fine, Sheldon Gordon, and Scott Gordon, argue that because they were not added to the action until after the two year statute of limitations had expired, all claims against them should be dismissed.[9]

Defendants APA, Gordon Group Holdings, and Taubman Centers, Inc. cite Williams Studio Div. of Photography by Tallas, Inc. v. Nationwide Mut. Fire Ins. Co., 550 A.2d 1333 (Pa. 1988) and Maxwell Downs, Inc. v. City of Philadelphia, 638 A.2d 473 (Pa. Super. 1994) for the proposition that a discontinued claim must be revived within the underlying statutory period in order to be timely.  Plaintiffs in Williams Studio and Maxwell Downs discontinued their claims and filed new, separate actions after the expiration of the statute of limitations.  Williams Studio, 550 A.2d at 1334; Maxwell Downs, 638 A.2d at 475.  The new actions were held to be time-barred.  Williams Studio, 550 A.2d at 1338; Maxwell Downs, 638 A.2d at 477.  However, in the case at bar, Plaintiffs have not instituted a new action, they have revived their original filing.

---

[9]  On August 22, 2011, after Judge Pollak struck the discontinuance, Plaintiffs filed their state court Complaint, adding Defendants Taubman Realty Group, Taubman Realty Group The Pier, and Taubman Company, Inc.  (Doc. Nos. 1-2, 1-3.)

On September 19. 2011, Plaintiffs filed their Amended Complaint, adding Defendants Pier Developers, Peter Fine, Sheldon Gordon, and Scott Gordon as defendants.  (Doc. No. 13.)

Controlling case law confirms that Pennsylvania courts have the power to revive certain actions after the expiration of the statute of limitations.  See Jung v. St. Paul's Parish, 560 A.2d 1356, 1361 (Pa. 1989); Hopewell, 562 A.2d at 900-01.

Indeed, in Hopewell the Pennsylvania Superior Court ordered the trial court to strike a discontinuance and reinstate a case even though the statute of limitations had expired.  562 A.2d at 899.  The Hopewell court specifically reasoned that "the prejudice to appellant is obvious [because] [u]nless the mistaken discontinuance is stricken, appellant is out of court because the statute of limitations on her cause of action has expired."  Id. at 901.  Like the Hopewell court, Judge Sheppard used his discretion under Pa. R. Civ. Pro. 229(c) to strike the discontinuance, even though the filing of a new suit would be barred by the statue of limitations.

In Jung, because plaintiffs failed to file a timely complaint, the court entered a judgment non pros.  Jung, 522 Pa. Ct. at 176.  Subsequently, the court used its discretion to set aside the judgment non pros, allowing the plaintiffs their day in court.  Although the case at bar does not involve a judgment non pros, the principle is the same: by statute, a Pennsylvania court has the authority to revive certain cases that would otherwise be barred by the statute of limitations. Here, Judge Sheppard reinstated the Writ of Summons "as if it had never been discontinued," bringing Plaintiffs within the statute of limitations as to the three Defendants named in the Writ. (Doc. No. 52-19 at 2.)  Therefore, Plaintiffs claims against these Defendants are not time-barred.

Further, as noted above, certain Defendants were added to the Complaint and the Amended Complaint after the expiration of the statute of limitations.  The claims against these newly added Defendants are timely, as their addition relates back to the filing of the Writ of Summons under the provisions of Rule 15(c) of the Federal Rules of Civil Procedure.  Rule 15(c) states:

**(1)** An amendment to a pleading relates back to the date of the original pleading when:
**(A)** the law that provides the applicable statute of limitations allows relation back;
**(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
**(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and
> **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15.  A Writ of Summons in state court is an "original pleading" within the meaning of Rule 15.  See Lempa v. Rohm and Haas Co., 2007 WL 878496 at *4-6 (E.D. Pa, March 20, 2007.)

The Third Circuit has interpreted Rule 15(c) to require "three conditions be met in order for an amended complaint seeking to substitute newly named defendants to relate back to the original complaint for statute of limitations purposes." Miller v. Hassinger, 173 Fed. Appx. 948, 955 (3d Cir.2006).  These conditions are: (1) that the claim against the newly named defendants arose out of the same conduct set forth in the original complaint; (2) that within the 120–day period for service of the summons and complaint, the newly named party received notice of the institution of the action such that it will not be prejudiced in maintaining a defense on the merits; and (3) that within that same period of time, the newly named party must have known, or should have known, that "but for a mistake," he or she would have been named as a defendant in the first place.  Singletary v. Pennsylvania DOC, 266 F.3d 186, 193–94 (3d Cir. 2001); Arthur v. Maersk, Inc., 434 F.3d 196, 203 (3d Cir.2006); Stewart v. Phila. Hous. Auth., 487 F.Supp.2d 584, 588–89 (E.D.Pa.2007).

There is no dispute that the first requirement has been met.  Plaintiffs' fraud claims, as

they relate to the newly added Defendants, arise out of the same conduct alleged in the Writ.

The newly added Defendants next allege that the filing of the Writ failed to put them on notice.[10]

However, this argument is not persuasive.  First, notice under Rule 15(c) arises when the newly

added defendants and the original defendants share an "identity of interests," meaning that they

are "so closely related in their business operations or other activities that the institution of an

action against one serves to provide notice of the litigation to the other."  Singletary, 266 F.3d at

197 (quoting 6A Charles A. Wright, et al., *Federal Practice & Procedure* § 1499, at 146 (2d

ed.1990) (internal quotations omitted)).  The inquiry is whether notice can be implied through

the nature of the working relationship of the new Defendants and the previously named

Defendants.  See Singletary, 266 F.3d at 198.

---

[10] The newly added Gordon Group Defendants also argue that the claims against them cannot relate back to the Writ because they "did not know, nor should they have known that they would be brought into the action but for a mistake concerning their identities."  (Doc. No. 56 at 2.)  To support their argument, they contend that Plaintiffs knew the identities of Peter Fine, Sheldon Gordon, and Scott Gordon before filing the Writ and yet did not name them as defendants.  (Id. at 4.)  They argue that this omission was strategic, not a mistake.  (Id. at 5.)

 However, "[t]he reasonableness of the [plaintiff's] mistake is not itself at issue."  Krupski v. Costa Crociere S., 560 U.S. 538, 130 S. Ct. 2485, 2494 (2010).  Additionally, knowledge that certain individuals or entities exist does not foreclose a "mistake concerning . . . identities" under Rule 15.  See id.  ("A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B.  Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim.  If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties.").   Finally, Courts have held that "the amendment of a 'John Doe' [pleading] can meet all of the conditions for Rule 15(c)(3) relations back, including the 'but for a mistake' requirement."  Smith v. Philadelphia, 363 F.Supp. 795, 801 (E.D. Pa. 2005) (citing Singletary, 266 F.3d at 200; Varlack v. SWC Caribbean, 550 F.2d 171, 175 (3d Cir. 1977)).

 Plaintiffs listed Gordon Group Holdings and several John Doe entities and individuals in the Writ.  After pre-complaint discovery, Plaintiffs replaced the John Does with: Pier Developers, a subsidiary of Gordon Group Holdings; Sheldon Gordon, the owner of Gordon Group Holdings; and Peter Fine and Scott Gordon, two employees of Gordon Group Holdings. These additions are permissible under Fed. R. Civ. P. 15(c).

The Court has already examined the working relationship of these parties and found that the Gordon Group Defendants and the Taubman Defendants are closely related in their business operations.  In his August 20, 2009 Opinion, Judge Robreno thoroughly explained and even diagramed the corporate web that makes up APA.  (Doc. No. 53-5.)  Two companies, Defendants Pier Developers and Taubman Realty Group The Pier, formed APA.  (Id. at 21.)  All remaining Defendants have some sort of corporate relationship with either Pier Developers (the Gordon Group Defendants) or Taubman Realty Group The Pier (the Taubman Defendants).  Specifically, Pier Developers is a subsidiary of Defendant Gordon Group Holdings, a company owned by Defendant Sheldon Gordon.  (Id. at 22.)  Defendants Scott Gordon and Peter Fine are employees of Gordon Group Holdings.  (Id.)  Alternatively, Defendant Taubman Realty Group The Pier is a wholly owned subsidiary of Defendant Taubman Realty Group.  (Id.)  Defendant Taubman Centers owns sixty-five percent managing interest in Defendant Taubman Realty Group and conducts all its operations.  (Id.)  In addition to Judge Robreno's findings, other Judges have concluded that certain Gordon Group and Taubman Defendants are alter egos and share an identity of interests.[11]  Thus, the newly added Gordon Group and Taubman Defendants share an

---

[11] United States Magistrate Judge Angell, when assigned the case by Judge Pollak, found that Taubman Co. had a "sufficient nexus of interest" with TCI "such that Taub Co. had proper notice of the filing of these legal proceedings." (Doc. No. 52 at 65.)   Judge Pollak's decision granting Taubman Defendants' motion to dismiss for lack of personal jurisdiction relied on a finding that TRG and TRG The Pier were alter-egos of TCI.  (Doc. No. 53-6 at 31.)

identity of interests with the previously named Defendants and, for this reason, were on notice as to Plaintiffs' suit.[12]

Further, notice may also be established when "an originally named party and the party who is sought to be added are represented by the same attorney." Singletary, 266 F.3d at 196. This is known as the "shared attorney" method, and is based on the theory that "the attorney is likely to have communicated to the latter party that he may very well be joined in the action." Id. Here, all of the Taubman Defendants were represented by the same attorney, Jeffery Meyers, in Boardakan I.  (Doc. No. 52 at 65.)  Meyers also represented Sheldon Gordon, Scott Gordon, and Peter Fine at their depositions.  (Id.)  Finally, Taubman Defendants and Gordon Group Defendants have a joint defense agreement in place, allowing them to be represented by the same counsel.  (Id. at 65-66.)  Accordingly, Defendants were also properly noticed under the "shared attorney" method.

### 2.    Plaintiffs' Claims Are Not Barred By Res Judicata

Defendants also argue that Plaintiffs' claims are barred by res judicata because Judge Pollak already dismissed their federal complaint as barred by the statute of limitations. Defendants assert the same argument, couched as collateral estoppel, in their Motion for Reconsideration.  Because res judicata and collateral estoppel overlap under Third Circuit precedent, the reasons why Defendants' res judicata argument fails are substantially similar to

---

[12]  Courts have interpreted the "but for a mistake" language in Rule 15(c) broadly, "to allow the addition of new parties that were never originally named or described." Fields v. Blake, 349 F.Supp. 2d 910, 918 (E.D. Pa. 2004).  Further, courts have held that "the amendment of a 'John Doe' complaint can meet all of the conditions for Rule 15(c)(3) relations back, including the 'but for a mistake' requirement." Smith v. Philadelphia, 363 F.Supp. 795, 801 (E.D. Pa. 2005) (citing Singletary, 266 F.3d at 200; Varlack v. SWC Caribbean, 550 F.2d 171, 175 (3d Cir. 1977)).

the reasons stated by this Court in its rejection of Defendants' collateral estoppel argument.[13]
Specifically, a dismissal based on a statute of limitations is not considered a judgment "on the merits" under Pennsylvania law.  See Brown v. Cooney, 442 A.2d 324, 326 (Pa. Super. Ct. 1982); Westinghouse Elec. v. WCAB, 883 A.2d 579 n.11 (Pa. 2005).

Further, the issues before Judge Pollak and the issues before this Court are not sufficiently similar for res judicata to apply.  The issue before Judge Pollak was whether a new action filed after a discontinuance was barred by the statute of limitations.  The issue before this Court is whether the revival of an action after a discontinuance was barred by the statute of limitations.  Since the issues are not the same, res judicata cannot apply.

### 3.    Plaintiffs' Claims Are Sufficient To State Causes of Action Against Defendants

As discussed above, the inquiry on a motion to dismiss for failure to state a claim is "broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

Count I of Plaintiffs' Amended Complaint alleges fraud against Defendants.  (Doc. No. 20-1 at 58.)  Under common law, the elements of fraud are: "(1) a material factual misrepresentation; (2) made with knowledge or belief of its falsity; (3) with the intention that the other party rely thereon; (4) resulting in justifiable reliance to that party to his detriment."

---

[13]  While res judicata "sometimes  is used narrowly to refer to claim preclusion, whereas collateral estoppel customarily refers to issue preclusion, [the Third Circuit] ha(s) previously noted that the preferred usage of the term res judicata encompasses both claim and issue preclusion." Russo v. City of Philadelphia, 459 Fed. App'x 176, 178 (3d Cir. 2012) (internal quotations omitted).

Agathos v. Starlite Motel, 977 F.2d 1500, 1508 (3d Cir. 1992) (citing Restatement (Second) of Torts §§ 525–526 (1977)).

In reviewing Plaintiffs' sixty-four page Amended Complaint, this Court finds the allegations are well pled.  Plaintiffs allege with particularity that: (1) Defendants made a material factual misrepresentation, namely that other upscale restaurants would be opening in the same shopping complex (Doc. No. 13, ¶¶72, 104) ;[14] (2) this assertion was made after it became clear to Defendants that the other upscale restaurants would in fact not be opening in the complex (Id. at ¶¶ 72, 76, 79, 80); (3) this misrepresentation was made with the intention that Plaintiffs would rely on it in deciding whether to enter into an amended lease (Id. at ¶¶ 92, 94, 96, 98, 111, 112, 113); and (4) Plaintiffs relied on this misrepresentation to their detriment, making significant investments in Defendants' property that they would not have made absent the fraud.[15]  (Id. at ¶¶ 114.)

Count II of Plaintiffs' Amended Complaint, alleging a claim of negligent misrepresentation, also survives a motion to dismiss.  Under Pennsylvania law, a claim for negligent misrepresentation has four elements: "(1) a duty recognized by law, requiring the actor to conform to a certain standard of conduct for protection of others against unreasonable risks, (2) failure to conform to the standard required, (3) a causal connection between the conduct and

---

[14]  Defendants argue that the leases are fully integrated and, as such, the parol evidence rule bars the introduction of any subsequent oral agreement.  This issue came before Judge Robreno who held that the parol evidence rule did not bar introduction of evidence of fraudulent inducement.

[15]  Defendants argue that Plaintiffs' fraud claims are grounded in contract law and are thus barred by the "economic loss doctrine" and the "gist of the action doctrine."  (Doc. No. 47-50.) However, these doctrines only apply where the claim alleges fraud in the performance of a contract.  Here, Plaintiffs allege fraud in the inducement of the contract, which is collateral to the performance of the contract and not barred by the "gist of the action" or "economic loss" doctrines.  See Grant Heilman v. John Wiley, 2012 WL 1138615 (E.D. Pa. March 30, 2012); Wekwinski v. Ford Motor Co., 286 F.3d 661 (3d Cir. 2002).

resulting injury, and (4) actual loss or damage resulting to interests of another."  Bouriez v. Carnegie Mellon Univ., 585 F.3d 765 (3d Cir. 2009).  The Amended Complaint establishes that Plaintiffs and Defendants entered into a contractual relationship through Defendant APA.  (Doc. No. 13, ¶63.).  Under Pennsylvania law, Defendants had an implied duty to disclose material information and to avoid fraudulent concealment.  Roberts v. Estate of Barbargallo, 531 A.2d 1125, 1130 (Pa. Sup. 1987).  The Amended Complaint establishes that Defendants failed to conform to this standard by fraudulently concealing and misrepresenting material information upon which Plaintiffs relied to their detriment.  (Id. at ¶¶ 92, 94, 96, 98, 111, 112, 113, 114.) Plaintiffs have sufficiently alleged all of the elements of negligent misrepresentation.

Count III is a claim for civil conspiracy.  Civil conspiracy is "not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort." Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000).  Plaintiffs have plausibly alleged in the Amended Complaint that the Taubman Defendants, the Gordon Group Defendants, and Atlantic Pier Associates, through their respective agents, were all involved in the underlying actions of fraud and negligent concealment.  (Id. at ¶¶ 92-101.)  As such, their related claim of civil conspiracy will be allowed to move forward.

Plaintiffs make out a claim for promissory estoppel in Count IV of their Amended Complaint.  (Doc. No. 20-1 at 62-63.)  Promissory estoppel "arises when a party relies to his detriment on the intentional or negligent representations of another party, so that in order to prevent the relying party from being harmed, the inducing party is estopped from showing that the facts are not as the relying party understood them to be."  Constar, Inc. v. Nat'l Distribution Ctrs., Inc., 101 F. Supp. 2d 319, 323 (E.D. Pa. 2000) (citing Thomas v. E.B. Jermyn Lodge No. 2, 693 A.2d 974, 977 (Pa.Super.1997); Rinehimer v. Luzerne Cnty. Cmty. Coll., 372 Pa.Super.

480, 539 A.2d 1298, 1306 (1988), app. denied, 521 Pa. 606, 555 A.2d 116 (1988)).   As previously stated, Plaintiffs have sufficiently pled that Defendants fraudulently induced them to sign an amended lease.  Therefore, at this stage, Plaintiffs' promissory estoppel claim will also move forward. [16]

## V.      CONCLUSION

For the foregoing reasons, Defendants' Motion for Reconsideration and Motions to Dismiss (Doc. Nos. 12, 17, 18, 19, 20, 22) will be denied in their entirety.  An appropriate Order follows.

---

[16]  Plaintiffs' last claim is labeled "alter ego."  (Doc. No. 20-1 at 63-64.)  While the nature of Defendants' working relationship is relevant for purposes of liability and statute of limitations, "alter ego" is not a stand-alone claim.