IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARDAKAN RESTAURANT LLC, et al.,

                Plaintiffs,

    v.

ATLANTIC PIER
ASSOCIATES, LLC., et al.,

                Defendants.

CIVIL ACTION
NO. 11-5676

**OPINION**

**Slomsky, J.**                                                                                             **August 15, 2014**

## I.   RELEVANT BACKGROUND

Plaintiffs Boardakan Restaurant, LLC and Oceanental Restaurant, LLC ("Plaintiffs") own two upscale restaurants at "The Pier at Ceasar's" ("The Pier") in Atlantic City, New Jersey. Plaintiffs lease space from Defendant Atlantic Pier Associates, LLC ("APA"), a limited liability company owned and operated by the Gordon Group Defendants[1] and the Taubman Defendants.[2] Plaintiffs originally entered into lease agreements (the "Lease Agreement")[3] with Defendants in 2004 when The Pier was still undergoing construction. The Lease Agreement contained the following jury waiver:

---

[1] The "Gordon Group Defendants" are Defendants Gordon Group Holdings, LLC, Pier Developers, Inc., Sheldon Gordon, Scott Gordon, and Peter Fine.

[2] The "Taubman Defendants" are Defendants Taubman Centers, Inc., Taubman Realty Group, LP, Taubman Realty Group The Pier, LLC, and the Taubman Company, LLC.

[3] The lease agreements have nearly identical terms. Accordingly, for purposes of this Opinion, the Court will refer to the lease agreements as one "Lease Agreement" or "Agreement."

1

<u>Section 18.5</u>   <u>Waiver of Trial by Jury</u>

> To the extent permitted by applicable law, Tenant hereby waives trial by jury in any action, proceeding or counterclaim brought by either party against the other on any matter whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant created hereby, Tenant's use or occupancy of the Premises or any claim or injury or damage.

(Doc Nos. 88-7; 88-8.)  Under the terms of the Lease Agreement, if Defendants did not finish construction of The Pier by March 2006, the Lease Agreement would automatically become null and void.  (Doc. No. 13 at  ¶ 51.)

In 2004, two other upscale restaurants, RumJungle and English Is Italian, also entered into lease agreements with Defendants.  It soon became apparent that The Pier would open later than scheduled.  Plaintiffs, knowing they would be able to walk away from the project, sent a letter to Defendants asking for further assurances.  (<u>Id.</u> at ¶85.)  Specifically, Plaintiffs asked if RumJungle and English Is Italian maintained binding leases with Defendants.  Plaintiffs then met with Defendant Peter Fine, who informed them that RumJungle and English Is Italian would "definitely" be opening at The Pier, when in fact they had both already terminated their leases.  (<u>Id.</u> at ¶ 103.)  Plaintiffs allege that Defendants sent emails, letters, and press releases, all confirming the participation of RumJungle and English Is Italian.  (<u>Id.</u> at ¶ ¶ 96, 99, 109.) Plaintiffs argue that Defendants conspired to keep them in the dark, knowing that they would not continue with the project without the other restaurants on board.

On February 22, 2006, one month before the Lease Agreement was set to expire, Plaintiffs signed a lease amendment (the "Amendment"),[4] amending the Lease Agreement with

---

[4] Like the lease agreements, the amendments have nearly identical terms.  Accordingly, for purposes of this Opinion, the Court will refer to the amendments as one "Amendment."

Defendants. The Amendment did not contain a jury waiver provision, but did contain the following paragraph:

> 16. Except as herein modified, all of the other terms, covenants and conditions of the aforesaid Lease shall remain in full force and effect.

(Doc Nos. 88-7; 88-8.)

The Amendment extended the time-frame for The Pier's opening. Plaintiffs assert that after signing the Amendment, they invested substantial sums of money "to construct, improve, open and operate" their restaurants at The Pier. (Id. at ¶ 114.) Plaintiffs claim they would not have signed the Amendment or invested in the property but for Defendants' misrepresentations in regard to the Rum Jungle and English Is Italian restaurants. (Id. at ¶ 96.)

Plaintiffs brought suit against Defendants, demanding a jury trial on their claims of fraud, negligent misrepresentation, promissory estoppel, conspiracy, and alter ego. (Doc. No. 13.) On December 9, 2013, the Taubman Defendants filed a Motion to Strike Plaintiffs' Jury Demand based on the Lease Agreement's jury waiver.[5] (Doc. No. 88.) On December 19, 2013, Plaintiffs filed a Response. (Doc. No. 90.) On December 30, 2013, the Taubman Defendants filed a Reply. (Doc. No. 92). On March 17, 2014, the Court held a hearing on the Motion, and the issue is now ripe for disposition. (Doc. No. 109.) For reasons that follow, the Court will grant the Motion to Strike Plaintiffs' Jury Demand.

## II. WAIVER OF A CIVIL JURY TRIAL

A civil litigant's right to a jury trial "is a fundamental right expressly protected by the Seventh Amendment to the United States Constitution." Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 222 (3d Cir. 2007) (citing Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1937);

---

[5] By letters dated March 24, 2014 and March 26, 2014, Defendant APA and the Gordon Group Defendants notified the Court that they also seek enforcement of the jury waiver.

Bouriez v. Carnegie Mellon Univ., 359 F.3d 292, 294 (3d Cir. 2004)).  However, "this right may be waived by contract as long as it is done knowingly and voluntarily." Bishop v. GNC Franchising, LLC, No. 05-0827, 2006 WL 2266251, at *1 (W.D.Pa. Jan.13, 2006) (citing AAMCO v. Marino, No. 88-552, 1990 WL 10024, at *1 (E.D. Pa. Feb.7, 1990)).

In order for a jury trial waiver to be knowing and voluntary, the facts must show that "(1) there was no gross disparity in bargaining power between the parties; (2) the parties are sophisticated business entities; (3) the parties had an opportunity to negotiate the contract terms; and (4) the waiver provision was conspicuous." SLB Ins. Inc. v. Brown & Brown Inc., No. 06-4189, 2007 WL 1152660, at *1 (E.D. Pa. Apr. 16, 2007) (citing First Union Nat'l Bank v. United States, 164 F.Supp.2d. 660, 663 (E.D. Pa. 2001)).

### III. PLAINTIFFS KNOWINGLY AND VOLUNTARILY WAIVED THEIR RIGHT TO A JURY TRIAL

Here, Plaintiffs waiver of their right to a jury trial was knowing and voluntary.  Plaintiffs are "sophisticated business entities." Id.  By their own admission, Plaintiffs are "well-known names" in the restaurant industry, with "business savvy." (Doc. No. 131-1 at 9.)  To operate their restaurants, Plaintiffs "engage in a multitude of . . . independent transactions" with "third parties." (Id.)  During lease negotiations, Plaintiffs were represented by counsel who negotiated the lease terms with Defendants.  (Doc. Nos. 88-2-88-6.)  Accordingly, there was "no gross disparity in bargaining power between the parties," and the "parties had an opportunity to negotiate the contract terms." SLB Ins. Inc., 2007 WL 1152660, at *1.  Finally, the waiver provision was a separate clause within the Lease Agreement, conspicuously labeled "Waiver of Trial by Jury." (Doc Nos. 88-7; 88-8.)

Plaintiffs advance two arguments to support the claim that they did not knowingly and voluntarily waive their right to a jury trial.  The Court finds both arguments unpersuasive.

4

A.  **The Lease Agreement's Waiver Provision Remained in Full Force and Effect After the Amendment Was Executed**

First, Plaintiffs contend that they have not waived their right to a jury trial because their claim of fraudulent inducement relates only to the circumstances under which they signed the Amendment, which did not contain a jury waiver. Accordingly, they argue that "the reach of the jury waiver provision in [the Lease Agreement] is limited to the documents in which [it] actually appear[s], and cannot be imported into the [Amendment] to preclude a fraudulent inducement claim as to the [Amendment]." (Doc. No. 90 at 13.) To support their claim that the jury waiver does not "reach" the Amendment, Plaintiffs cite USX Corp. v. Prime Leasing Inc., 988 F.2d 433 (3d Cir. 1993) and Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co., No. 09-236, 2009 WL 4572911 (W.D. Pa. Dec. 4, 2009).

USX involved a dispute over a loan. The plaintiff lent the defendant money for the purchase of telecommunications equipment, which the defendant then leased to a third-party. USX, 988 F. 2d at 434. The third-party was declared insolvent and the defendant ultimately defaulted on the plaintiff's loan. Id. The plaintiff brought suit, claiming that the defendant was aware of the third-party's financial difficulties and failed to promptly inform the plaintiff, in violation of the parties' "Collateral Assignment" agreement. Id. at 435-36. The Collateral Assignment agreement contained "notice provisions" requiring the defendant to notify the plaintiff if any party to the lease defaulted. Id.

The defendant moved to dismiss the plaintiff's complaint, in part because the parties also included "nonrecourse provisions" in other documents concerning the loan, namely the Note and the Security Agreement. Id. at 436. In the nonrecourse provisions, the parties agreed that the defendant would not face liability for nonpayment of the loan. Id. The Third Circuit reversed the District Court's dismissal of the action based on the nonrecourse provisions, holding that the

5

Note, Security Agreement, and Collateral Agreement were all separate agreements, even though they related to the same transaction.  Accordingly, the Court held that the provisions of one agreement did not automatically transfer to the other agreements.  The Third Circuit reasoned:

> [R]egardless of the various interrelationships of the agreements, it is clear as a matter of contract law that the applicability of certain provisions may be limited to the documents in which they actually appear. Even where several instruments pertaining to one transaction must be construed together, the provisions of one instrument are not thereby imported bodily into another. The application of the rule does not result in actual consolidation of the several contracts.  Each of several instruments may be construed in the light of the others, without their being considered as one for all purposes.

Id. at 437-38 (quoting Sterling Colorado Agency, Inc. v. Sterling Ins. Co., 266 F.2d 472, 476 (10th Cir.1959); Huyler's v. Ritz–Carlton Rest. & Hotel Co., 1 F.2d 491, 492 (D.Del.1924); citing 17A C.J.S. Contracts § 298; 17A Am. Jur.2d Contracts § 388 ("Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect. . . . This does not mean that the provisions of one instrument are imported bodily into another; . . . they may be intended to be separate instruments and to provide for entirely different things.")).

In Partners Coffee, the parties entered into an agreement, the Asset Purchase Agreement, whereby the plaintiff was to purchase substantially all of the defendant's assets.  2009 WL 4572911, at *1.  Simultaneously, the parties entered into another agreement, the Consulting Agreement, under which the defendant's sole shareholder would provide consulting services to the plaintiff for a fee.  Id.  The Consulting Agreement contained a jury waiver, the Asset Purchase Agreement did not.  Id. at *13-14.  The plaintiff brought suit against the defendant

claiming, among other things, that the defendant misrepresented the financial condition of its company before the signing of the Asset Purchase Agreement.

The defendant moved to strike the plaintiff's jury demand, arguing that the jury waiver in the Consulting Agreement was also applicable to the Asset Purchase Agreement, but the court denied the motion.  Citing USX, the court found that the agreements contained provisions that were limited to the documents in which they actually appeared.  Id. at *15-16.  The court also noted that the jury waiver stated that the parties were waiving their right to a jury trial "in respect of any litigation arising out of, under or in connection with this [Consulting] Agreement."  Id. at *14. (emphasis in original.)  Therefore, the language of the jury waiver expressly limited its scope to the Consulting Agreement.

 Plaintiffs rely on these cases to support their argument that the jury waiver in the Lease Agreement cannot "reach" the separate Amendment.  However, this argument is unpersuasive, and the cases cited by Plaintiffs are inapplicable here.  Both USX and Partners Coffee involved a party attempting to import the provisions of one agreement into a separate agreement.  Because each agreement related to a similar subject matter, the agreements were read together, but to prevent "consolidation of the several contracts," the provisions of each agreement were "limited to the documents in which they actually appear[ed]."  USX, at 437-38.

Here, despite Plaintiffs' argument to the contrary, the parties have not entered into "several instruments pertaining to one transaction."  Id.  The parties have entered into, and subsequently amended, one Lease Agreement.  The terms of the Amendment acknowledge that the Amendment was entered into by the parties in order to modify the Lease Agreement.  (Doc. No. 92-2) ("Whereas Landlord and Tenant now desire to amend and modify the Lease in certain respects, now, therefore . . . it is hereby mutually agreed as follows: [listed amendments].")

Accordingly, the Amendment was incorporated into the Lease Agreement and the provisions of both documents constitute one new, amended lease agreement—not two separate agreements.

Most convincingly, the language of the Amendment states that it "amend[s] and modif[ies] the Lease in certain respects," but that "[e]xcept as herein modified, all of the other terms, covenants and conditions of the aforesaid Lease shall remain in full force and effect." (Doc Nos. 88-7; 88-8.)  Accordingly, the parties intended for all of the provisions in the Lease Agreement not modified by the Amendment to remain in effect and for the two agreements to be read as one.  The jury waiver, which was a term of the Lease Agreement, was not ameded and modified by the Amendment.  Consequently, the resulting agreement contained a jury waiver, which was knowingly and voluntarily entered into by Plaintiffs.

### B.  Plaintiffs' Fraud Claim Does Not Invalidate the Jury Waiver Provision

Next, Plaintiffs contend that because they were fraudulently induced into signing the Amendment, the jury waiver provision must be invalidated.  (Doc. No. 90 at 16-20.)

If a plaintiff alleges fraud as a means "to invalidate an otherwise valid jury waiver provision, the allegation of fraud must incorporate an allegation that the jury waiver clause itself was procured by fraudulent means."  Aamco Transmissions, Inc. v. Harris, No. 89-5533, 1990 WL 83336 (E.D. Pa. June 18, 1990) (citing Telum, Inc. v. E.F. Hutton Credit Corp., 859 F.2d 835, 837–38 (10th Cir.1988), cert. denied, 57 U.S.L.W. 3687 (1989)).  A party's "general allegations of fraud, however, do[es] not affect application of the jury waiver provision and in no way suggest[s] waiver of the right to a jury trial was involuntary or not knowing."  Cottman Transmission Sys. v. McEneany, 2007 WL 119956, at *3 (E.D. Pa. Jan. 4, 2007).

Here, Plaintiffs admit that "[t]here is no claim for fraudulent inducement of the [original] [Lease Agreement]."  (Doc. No. 90 at 10.)  Neither have they claimed that they were fraudulently induced into signing the jury waiver, a specific provision of the Lease Agreement.  Because

8

Plaintiffs' "general allegations of fraud . . . do not affect [the] application of the jury waiver provision," their argument must fail. Cottman Transmission Sys., 2007 WL119956, at *3.[6]

## IV.  CONCLUSION

For the forgoing reasons, the Court will enforce the jury waiver, and Taubman Defendant's Motion to Strike Plaintiffs' Jury Demand will be granted.  An appropriate Order follows.

---

[6] Plaintiffs cite Rivard v. Bello, No. 12-4642, 2013 WL 1285414 (E.D. Pa. Mar. 27, 2013) to support the proposition that a general claim of fraudulent inducement may render a jury waiver invalid.  However, in Rivard, the court did not render the jury waiver invalid.  Id. at *5.  Instead, because the case was in the early stages of litigation and "[t]he validity of [the agreement] and Plaintiff's fraud claim depend[ed] on facts which [had] yet to be established," the court refused to strike the jury demand "at [that] time."  Id. at *2,*5.  Here, the facts of Plaintiffs' claim of fraudulent inducement have been well developed over years of litigation.  Plaintiffs' claim does not allege that they were fraudulently induced to enter into the jury waiver, and therefore the waiver is valid.

Finally, in a footnote, Plaintiffs argue that the Taubman Defendants were non-signatories to the Lease Agreement and, as such, cannot enforce its terms.  As acknowledged by Plaintiffs in their Amended Complaint, the Taubman Defendants are agents of Plaintiffs' successor landlord, Defendant APA.  (Doc. No. 13 at ¶¶ 60, 83, 102-04, 124, 124, 162.)  Defendant APA took over the obligations of the Lease Agreement from Plaintiffs' original landlord and Lease Agreement signatory Pier Developers, Inc.  (See Doc. No. 92-5, 92-6) (Under the terms of the Lease Agreement, "[a]ll rights and liabilities herein given to or imposed upon the respective parties hereto shall bind and inure to the several respective . . . successors . . . and assigns of the parties.")  The Third Circuit has held that jury waivers bind the agents of a corporation as well as the corporation itself.  Tracinda Corp. v. DaimlerChrysler AG, 502 F. 3d 212, 225 (3d Cir. 2007).  Accordingly, Defendant APA and its agents, including the Taubman Defendants, have standing to enforce the jury waiver.