IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BOARDAKAN RESTAURANT LLC, et al.,

Plaintiffs,

v.

GORDON GROUP HOLDINGS, LLC, et al.,

Defendants.

CIVIL ACTION
NO. 11-5676

## OPINION

Slomsky, J.                                                    July 31, 2015

## I.     INTRODUCTION

Plaintiffs Boardakan Restaurant, LLC and Oceanental Restaurant, LLC own two upscale restaurants at "The Pier at Caesar's" ("The Pier") in Atlantic City, New Jersey. Plaintiffs lease space from Atlantic Pier Associates, LLC ("APA"), a limited liability company owned and operated by the Gordon Group[1] and the Taubman Group.[2] In late 2005, the parties began negotiating amendments to Plaintiffs' leases for the two restaurants at The Pier. On February 22, 2006, Plaintiffs signed Amended Leases.

On August 14, 2014, Plaintiffs filed a Second Amended Complaint against APA, the Gordon Group, and the Taubman Group asserting various claims arising from negotiations that led to the execution of the Amended Leases. Specifically, Plaintiffs allege in the Second

---

[1] The "Gordon Group" consists of Gordon Group Holdings, LLC, Pier Developers, Inc., Sheldon Gordon, Scott Gordon, and Peter Fine. These are the only Defendants remaining in this case.

[2] The "Taubman Group" consists of Taubman Centers, Inc., Taubman Realty Group, LP, Taubman Realty Group The Pier, LLC, and the Taubman Company, LLC. These Defendants and APA were dismissed from this case by stipulation on December 29, 2014. (See Doc. No. 198.)

Amended Complaint the following claims against all Defendants:  Count I—Fraudulent

Inducement based on concealment,[3] nondisclosure,[4] and misrepresentation[5];  Count II—

_____

[3] In Pennsylvania, the tort of fraudulent concealment is set forth in Restatement (Second) of Torts § 550.  Youndt v. First Nat'l Bank of Port Allegany, 868 A.2d 539, 549 (Pa. Super. Ct. 2005).  Section 550 reads as follows:

§ 550.  Liability for Fraudulent Concealment.

One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering.

[4] As will be described below, in their Motion for Partial Summary Judgment (Doc. No. 205), Plaintiffs argue that they are entitled to summary judgment on their claim of fraudulent inducement based only on nondisclosure.  The basis for this claim is Defendants' failure to disclose to Plaintiffs the contents of certain letters Defendants received in November 2005 regarding the tenancy of RumJungle and English Is Italian, two other restaurants that planned to open at The Pier.  (Doc. No. 205-2 at 1.)  In Pennsylvania, the tort of fraudulent nondisclosure is set forth in Restatement (Second) of Torts § 551.  Youndt v. First Nat'l Bank of Port Allegany, 868 A.2d 539, 550 (Pa. Super. Ct. 2005).  Section 551 reads as follows:

§ 551.  Liability for Nondisclosure.

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

2

Negligent Misrepresentation;  Count III—Civil Conspiracy[6];  Count IV—Promissory Estoppel;

and Count V—Alter Ego.[7]  (Doc. No. 147.)

On December 29, 2014, this Court approved a stipulation dismissing APA and the

Taubman Group as Defendants in this case.  (Doc. No. 198.)  On February 6, 2015, the Gordon

Group (hereinafter "Defendants") and Plaintiffs filed cross-motions for summary judgment.

(Doc. Nos. 204, 205.)  Defendants contend that they are entitled to summary judgment on all of

---

> (d) the falsity of a representation not made with the expectation that it would
> be acted upon, if he subsequently learns that the other is about to act in
> reliance upon it in a transaction with him; and
>
> (e) facts basic to the transaction, if he knows that the other is about to enter
> into it under a mistake as to them, and that the other, because of the
> relationship between them, the customs of the trade or other objective
> circumstances, would reasonably expect a disclosure of those facts.

[5]  In Pennsylvania, the tort of fraudulent misrepresentation is set forth in Restatement (First) of
Torts § 529.   Neuman v. Corn Exch. Nat'l Bank & Trust Co., 51 A.2d 759, 764 (Pa. 1947).
Section 529 reads as follows:

> § 529.  Representation Misleading Because Incomplete.
>
> A statement in a business transaction which, while stating the truth so far as it
> goes, the maker knows or believes to be materially misleading because of his
> failure to state qualifying matter is a fraudulent misrepresentation.

[6]  In their Response in Opposition to Defendants' Motion for Summary Judgment, Plaintiffs state
that they "no longer intend to pursue a civil conspiracy claim."  (Doc. No. 209-3 at 77.)
Accordingly, the civil conspiracy claim asserted in Count III of the Second Amended
Complaint will be dismissed.

[7]  In Count V of the Second Amended Complaint, Plaintiffs assert a claim for "Alter Ego."
(Doc. No. 147 ¶¶ 167-71.)  "Alter Ego," though, is not a cause of action.  Rather, it is a theory
of liability that permits a court to "pierce the corporate veil" and impose liability on a
corporation's owners or on a subservient corporation.   See Black's Law Dictionary 94 (10th
ed. 2014).  Therefore, if Plaintiffs do not prevail on their other claims, they will have no basis
for imposing alter ego liability upon any Gordon Group Defendant.  Neither party addressed
Plaintiff's "Alter Ego" claim in their motions for summary judgment.

3

Plaintiffs' claims.  Plaintiffs submit that they are entitled to summary judgment on their claim of fraudulent inducement based only on nondisclosure.

The parties' cross-motions for summary judgment are now ripe for decision.[8]  For reasons that follow, the Motions (Doc. Nos. 204, 205) will be denied.

## II.    BACKGROUND

The factual background of this case is discussed in the Opinion of this Court dated July 17, 2014 (Doc. No. 142).  The relevant portion of the Opinion reads as follows:

> Plaintiffs originally entered into lease agreements (the "Lease Agreement" or "Agreement")[9] with Defendants in 2004 when The Pier was still undergoing construction with a scheduled opening date of March 2006.  Under the terms of the Lease Agreement, if The Pier did not open on time, then Plaintiffs' lease would automatically become null and void.  (Doc. No. 13 ¶ 51.)
>
> In 2004, two other upscale restaurants, RumJungle and English Is Italian, also entered into lease agreements with Defendants.  It soon became apparent that The Pier would open later than scheduled.  Knowing they would be able to walk away from the project, Plaintiffs sent a letter to Defendants asking for further assurances.  (Id. ¶ 85.)  Specifically, Plaintiffs asked if RumJungle and English Is Italian maintained binding leases with Defendants.  Plaintiffs then met with Defendant Peter Fine, who informed them that RumJungle and English Is Italian would "definitely" be opening at The Pier, when in fact they had both already terminated their leases.  (Id. ¶ 103.)  Plaintiffs allege that Defendants sent emails, letters, and press releases, all confirming the participation of RumJungle and English Is Italian.  (Id. ¶¶ 96, 99, 109.)  Plaintiffs argue that Defendants conspired to keep them in the dark, knowing that they would not continue with the project without the other restaurants on board.  On February 22, 2006, one month before their lease was set to expire, Plaintiffs entered into amended lease agreements with Defendants, investing substantial sums of money "to construct, improve,

---

[8]  In deciding the parties' cross-motions for summary judgment, the Court has considered the following:  Defendants' Motion for Summary Judgment (Doc. No. 204); Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 205); Defendants' Response in Opposition to Plaintiffs' Motion (Doc. No. 207); Plaintiffs' Response in Opposition to Defendants' Motion (Doc. No. 209); Plaintiffs' Reply in Further Support of their Motion (Doc. No. 212); the arguments of counsel for parties at the hearing on the cross-motions for summary judgment held on May 20, 2015; and the pleadings, deposition transcripts, and exhibits on file.

[9]  The lease agreements for Plaintiffs' two restaurants at The Pier have nearly identical terms.

open and operate" their restaurants at The Pier.  (Id. ¶ 114.)  Plaintiffs claim that they would not have made these investments but for Defendants' misrepresentations.  (Id. ¶ 96.)

(Doc. No. 142 at 1-2.)

## III.   STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010) (quotation omitted)).  A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For a fact to be considered "material," it "must have the potential to alter the outcome of the case."  Favata, 511 F. App'x at 158.  Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."  Id. (quoting Azur, 601 F.3d at 216 (internal quotation marks omitted)).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. (quoting Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009)

(internal quotation marks omitted)).  The court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  <u>Anderson</u>, 477 U.S. at 247-49.  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the court must credit the non-moving party's evidence over that presented by the moving party.  <u>Id.</u> at 255.  If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  <u>Id.</u> at 250.

"The same standards and burdens apply on cross-motions for summary judgment."  <u>Allah v. Ricci</u>, 532 F. App'x 48, 50 (3d Cir. 2013) (citing <u>Appelmans v. City of Phila.</u>, 826 F.2d 214, 216 (3d Cir.1987)).  When the parties have filed cross-motions for summary judgment, as in this case, the summary judgment standard remains the same.  <u>Transguard Ins. Co. of Am., Inc. v. Hinchey</u>, 464 F.Supp.2d 425, 430 (M.D.Pa.2006).  "When confronted with cross-motions for summary judgment . . . 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'"  <u>Id.</u> (quoting <u>Marciniak v. Prudential Fin. Ins. Co. of Am.</u>, 184 F. App'x 266, 270 (3d Cir. 2006)).  "If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts."  <u>Id.</u> (citing <u>Iberia Foods Corp. v. Romeo</u>, 150 F.3d 298, 302 (3d Cir. 1998)).

## IV.   ANALYSIS

As noted above, the parties have filed cross-motions for summary judgment.  (Doc. Nos. 204, 205.)  The Court has carefully considered the relevant pleadings, motions, briefs, and

exhibits in the light most favorable to the non-moving party.  Many arguments of the parties hinge upon disputed issues of material fact that preclude granting summary judgment.

Plaintiffs, in their Partial Motion for Summary Judgment (Doc. No. 205), argue that they are entitled to summary judgment on their claim of fraudulent inducement based only on Defendants' nondisclosure.  (Doc. No. 205-2 at 25.)  This claim is based on Defendants' failure to disclose to Plaintiffs the contents of certain letters Defendants received in November 2005 regarding the tenancy of RumJungle and English Is Italian at The Pier.  As noted previously, Pennsylvania has adopted the tort of nondisclosure in Restatement (Second) or Torts § 551. Youndt v. First Nat'l Bank of Port Allegany, 868 A.2d 539, 550 (Pa. Super. Ct. 2005).  In relevant part, § 551 reads as follows:

§ 551.  Liability for Nondisclosure.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

\* \* \*

(b) matters know to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

\* \* \*

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

The Court has reviewed the pleadings, deposition transcripts, and exhibits on file, as well as Defendants' arguments in opposition to Plaintiffs' Motion.  The Court is satisfied that there are genuine issues of material fact as to whether:  (1) Defendants exercised reasonable care to disclose facts material to the transaction; (2) there were matters known to Defendants that were necessary to prevent partial or ambiguous statements of fact from being misleading; (3) such

facts were basic to the transaction; and (4) Plaintiffs, because of their relationship with Defendants, could reasonably expect Defendants to disclose such facts.  Accordingly, Plaintiffs' Motion for Partial Summary Judgment will be denied.

Defendants, in their Motion for Summary Judgment (Doc. No. 204), argue that Plaintiffs cannot establish their fraudulent inducement claim because:  (1) Defendants made no misrepresentation; (2) Plaintiffs cannot establish fraudulent intent; and (3) Plaintiffs cannot establish justifiable reliance.  (Doc. No. 204 at 6-21.)  After a review of the pleadings, deposition transcripts, and exhibits on file, as well as Plaintiffs' arguments in opposition to Defendants' Motion, the Court is satisfied that there are genuine issues of material fact regarding these issues. In addition, there are genuine issues of material fact regarding negligent misrepresentation and promissory estoppel claims.  Thus Defendants' Motion for Summary Judgment also will be denied.

In conjunction with the denials of summary judgment, four arguments of Defendants merit further discussion because they raise questions of law that can be decided by the Court at this stage of the litigation.  Defendants argue that:  (1) the parol evidence rule bars Plaintiffs' claims; (2) Defendants cannot be liable for negligent misrepresentation because such claims are "limited to situations in which the defendant accepts the role of advisor and provides guidance to the plaintiff"; (3) Defendants cannot be liable for fraudulent concealment because such claims are limited to situations where there is a confidential or fiduciary relationship between the parties; and (4) Defendants cannot be liable for promissory estoppel because they were only the agents of the landlord, APA, and agents cannot be liable for promises attributed to their principals.  Defendants' arguments are not persuasive.

### A.       The Parol Evidence Rule Does Not Bar Plaintiffs' Claims

The Pennsylvania Supreme Court has described the parol evidence rule as follows:

> Where the parties, without fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement.  All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.
>
> * * *
>
> Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract.

Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004).

In cases where fraud is averred, whether parol evidence is admissible depends on the nature of the alleged fraud.  Youndt v. First Nat'l Bank of Port Allegany, 868 A.2d 539, 546 (Pa. Super. Ct. 2005).  In Youndt, the Pennsylvania Superior Court noted that an exception to the parol evidence rule applies in cases of "fraud in the execution."  Id. at 546.  In such cases, "'the party proffering the evidence contends that he executed the agreements because he was defrauded by being led to believe that the document contained terms that actually were omitted therefrom.'"  Id. (quoting Blumenstock v. Gibson, 811 A.2d 1029, 1037 (Pa. Super. Ct. 2002)).  Thus, "'parol evidence may be introduced to vary a writing meant to be the parties' entire contract where a party avers that a term was omitted from the contract because of fraud.'"  Id. (quoting Yocca, 854 A.2d at 437).

Another exception to the parol evidence rule applies in cases of "fraud in the inducement."  Id.  In such a case, "'the party proffering evidence of additional prior representations does not contend that the representations were omitted from the written

9

agreement, but, rather, claims that the representations were fraudulently made and that but for them he would never have entered into the agreement.'" Id. (quoting Blumenstock, 811 A.2d at 1036). The theory is that "since fraud induced the agreement, no valid agreement came into being and parol evidence is admissible to show that the alleged agreement is void." Id.

Nevertheless, "in a case of fraud in the inducement, parol evidence is inadmissible where the contract contains terms that deny the existence of representations regarding the subject matter of the alleged fraud." Id. A contract with an integration clause[10] has the effect of denying the existence of prior representations. However, "when the contract contains no such term[s] . . ., parol evidence is admissible to show fraud in the inducement." Id.

The present case is one of fraud in the inducement. Plaintiffs aver that they were induced to enter into the Amended Leases based on Defendants' "material misrepresentations, fraudulent concealments and fraudulent nondisclosures, relating to the status of the RumJungle and English is Italian projects at the Pier at Caesar's." (Doc. No. 209-3 at 1-2.) Plaintiffs do not seek to add to, subtract from, explain, or vary the terms of the Amended Leases. Rather, Plaintiffs argue that they would not have entered into the Amended Leases but for Defendants' fraudulent misrepresentations and omissions regarding then-existing facts about third parties RumJungle and English Is Italian, and they seek rescission of the Amended Leases. (Doc. No. 147 at 65.)

The original Leases contain an integration clause that reads as follows:

Section 24.3.  Entire Agreement

There are no representations, covenants, warranties, promises, agreements, conditions or undertakings, oral or written, between Landlord and Tenant other

_____

[10] An integration clause is "[a] contractual provision stating that the contract represents the parties' complete and final agreement and supersedes all informal understandings and oral agreements relating to the subject matter of the contract." Black's Law Dictionary 929 (10th ed. 2014).

than herein set forth.  Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless in writing, signed by them and approved by Landlord's mortgagee.

(Doc. No. 147-1 at 33.)

The Amended Leases do not contain an integration clause similar to the clause in the original Leases.  The Amended Leases, however, adopt the integration clause in the original Leases by providing that "[e]xcept as herein modified, all of the other terms, covenants and conditions of the [original] Lease[s] shall remain in full force and effect."  (Doc. No. 147-7 at 4.) But, in a related matter arising in the instant case, this Court (Robreno, J.) held that the integration clause as contained in the original Leases and as adopted in the Amended Leases only applied to statements made before the original Leases were signed, and not to statements made during the time period between the signing of the original Leases and the Amended Leases.  Atl. Pier Assocs., LLC v. Boardakan Rest. Partners, 647 F. Supp. 2d 474, 493 (E.D. Pa. 2009). Therefore, there is no integration clause that would bar reliance upon the alleged misstatements and omissions at issue in this case, since they occurred during this intervening time period.  Id. The Court explained its holding as follows:

As the [Pennsylvania Superior Court in Giant Food Stores, LLC v. Silver Spring Development, L.P., 959 A.2d 438 (Pa. Super. Ct. 2008)], suggested, an integration clause is temporal in nature, and thus, the timing of its execution will necessarily limit its effect. Here, the integration clause contained in the original Leases indicates that on the date of execution of the Leases, "there [were] no representations, covenants, warranties, promises, agreements, conditions or undertakings, oral or written, between Landlord and Tenant other than set forth herein."  The incorporation of this term into the Amended Leases operates to preserve the original integration clause, and preclude evidence of oral or written communications which occurred prior to the execution of the original lease. However, mere incorporation of this term does not extend, ipso facto, the temporal reach of the integration clause to the time period between the execution of the original Leases to the execution of the Amended Leases.  Consequently, the Amended Leases do not contain a clause fully integrating the Leases during the

time between the execution of the original Leases and the execution of the Amended Leases.

Id. (internal citation omitted).  This holding is the law of the case.[11]  Because the Amended Leases do not contain a relevant integration clause, the parol evidence rule does not bar Plaintiffs from introducing evidence of Defendants' alleged prior misrepresentations and omissions to prove fraud in the inducement.

Defendants contend that the Pennsylvania Supreme Court has limited the fraud exception to the parol evidence rule to fraud in the execution of a contract, and has refused to apply the fraud exception to fraud in the inducement of a contract.  (Doc. No. 204 at 22).  However, Defendants cite no case where a court applying Pennsylvania law has used the parol evidence rule to bar evidence of fraud in the inducement where the contract does not contain an integration clause which would therefore preclude reliance on the oral representations.  See also Wall v. CSX Transp., Inc., 471 F.3d 410, 410 (2d Cir. 2006) (in reviewing a report and recommendation applying Pennsylvania's parol evidence rule, noting that "[n]either the Magistrate Judge, nor the District Court, nor the defendants cited any Pennsylvania case where an agreement without an integration clause precluded a plaintiff from bringing a suit for fraudulent inducement").

The cases Defendants rely upon to support their position are distinguishable from the present case.  In Yocca v. Pittsburgh Steelers Sports, Inc., plaintiffs sued the Pittsburgh Steelers and the company that owned the team's stadium for alleged misrepresentations related to the sale

---

[11] "The law of the case doctrine limits relitigation of an issue once it has been decided in an earlier stage of the same litigation."  Yucic v. Purdue Pharma, L.P., 343 F. Supp. 2d 386, 390 (M.D. Pa. 2004) (quoting Hamilton v. Leavy, 322 F.3d 776, 786 (3d Cir. 2003)).  "Law of the case rules apply to subsequent rulings by different judges in the same case."  Id. (citing Casey v. Planned Parenthood of Southeastern Pennsylvania, 14 F.3d 848, 856 n.11 (3d Cir. 1994)).  "The doctrine is designed to protect traditional ideals such as finality, judicial economy and jurisprudential integrity."  Id. (citing In re City of Phila. Litig., 158 F.3d 711, 717-18 (3d Cir. 1998)).

of season tickets to Steelers football games.  854 A.2d at 427.  The Supreme Court of

Pennsylvania held that the parol evidence rule barred plaintiffs' claims for breach of contract,

violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law

("UTPCPL"), and a declaratory judgment.  Id. at 438.

The plaintiffs in Yocca had purchased "stadium builder licenses" ("SBLs"), which were

essentially licenses granting the licensee the right to buy annual season tickets to Steelers

football games at Heinz Field, the new stadium the Steelers planned to build.  Id. at 427.  Since

the SBLs were being sold before Heinz Field was built, defendants could provide SBL offerees

with only an "SBL Brochure" that included a general diagram of the stadium's seating

arrangement.  Id. at 427-29.  Persons who wished to purchase an SBL were instructed to fill out

an application and indicate the section in the stadium where they preferred to sit based on the

diagram provided in the SBL Brochure.  Id.  A few months after the deadline for sending in SBL

applications, those persons who were extended offers to purchase SBLs were sent a letter

notifying them of their section assignment, but not the specific location of their seats, because

the stadium still had not been built.  Id. at 429.  The letter attached a diagram of the seating

sections in the stadium that, like the diagram in the SBL Brochure, only offered a general

description of the location of each section.  Id.   The letter stated that offerees would soon be sent

a contract—the "SBL Agreement"—that they would have to sign and return if they wished to

purchase SBLs for that section.  Id. at 429-31.  Because construction of Heinz Field had not been

finished, SBL purchasers would learn of their specific seating assignments only after they signed

the SBL Agreements.  Id. at 431.

When Heinz Field was finished and the SBL purchasers received their specific seating

assignments, plaintiffs, who were SBL purchasers, brought suit because their seats were not

where they expected them to be based upon the diagram provided in the SBL Brochure.[12]  Id. at

431-32.  The Pennsylvania Supreme Court held that the parol evidence rule barred plaintiffs'

claims.  Id. at 438-39.  The court noted that the SBL Agreement contained an integration clause

which stated as follows:

> This Agreement contains the entire agreement of the parties with respect to the matters provided for herein and shall supersede any representations or agreement previously made or entered into by the parties hereto.  No modification hereto shall be enforceable unless in writing, signed by both parties.

Id. at 431.

The court explained that the parol evidence rule barred plaintiffs' attempt to explain or

vary the terms of the SBL Agreement:

> Accordingly, we find that the SBL Agreement represented the parties' entire contract with respect to the sale of SBLs and that the parol evidence rule bars the admission of any evidence of previous oral or written negotiations or agreements entered into between the parties concerning the sale of the SBLs, such as the SBL Brochure, to explain or vary those terms expressed in the SBL Agreement.
>
> * * *
>
> [Plaintiffs'] breach of contract claims are entirely based on allegations that the Steelers violated the terms and conditions set forth in the SBL Brochure. Therefore, because those terms and conditions are not, in fact, part of the parties'

---

[12] In Yocca, plaintiffs initially sued for breach of contract, fraud, negligent misrepresentation, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), a declaratory judgment reforming the SBL Agreement, and an injunction requiring that the season tickets be reissued or that the SBL Agreement be rescinded.  854 A.2d at 432.  The trial court held that the parol evidence rule barred all of plaintiffs' claims.  It reasoned that "because the SBL Agreement was a fully integrated agreement that represented all the terms of the parties' agreement, it superseded all of the parties' previous negotiations and agreements, including the terms of the SBL Brochure."  Id. at 433. As to plaintiffs' fraud and negligent misrepresentation claims, the trial court held that they sounded in contract, not tort, because they were directly based on the parties' contractual agreement.  Id.  Therefore, they could not be brought as separate tort claims.  Id.  The appellate court reinstated plaintiffs' breach of contract, UTPCPL, and declaratory relief claims.  Id. at 434.  Then, for reasons explained below, the Supreme Court of Pennsylvania reversed the appellate court's order reinstating the breach of contract, UTPCPL, and declaratory relief claims.  Id. at 439.

contract, [Plaintiffs'] breach of contract claims fail to state a claim upon which relief can be granted.

Id. at 438.

The plaintiffs in <u>Yocca</u> alleged that they had been promised seats in certain locations based on the diagrams contained in the SBL Brochure. The SBL Brochure and those diagrams, though, were not part of the SBL Agreement, which was the final contract between the parties. Therefore, the court barred plaintiffs from introducing evidence to explain or vary the terms of the final agreement between the parties.

Unlike in <u>Yocca</u>, the contracts at issue in the present case, the Amended Leases, do not contain an applicable integration clause, and Plaintiffs are not seeking to "explain or vary" the terms of the Amended Leases. Rather, as explained above, Plaintiffs assert that they would not have entered into the Amended Leases but for Defendants' fraudulent misrepresentations and omissions of then-existing facts about third parties. This claim is different than the one in <u>Yocca</u>, where the plaintiffs alleged that they were promised something different than what was reflected in the final contract. Here, because the Amended Leases do not contain a relevant integration clause and Plaintiffs do not seek to "explain or vary" the terms of the Amended Leases, the parol evidence rule does not bar them from offering evidence of Defendants' alleged fraudulent representations and omissions of then-existing facts to prove fraud in the inducement.

The Pennsylvania Supreme Court's decision in <u>Toy v. Metropolitan Life Insurance Co.</u>, 928 A.2d 186 (Pa. 2007), is also distinguishable from the present case. In <u>Toy</u>, the plaintiff sued an insurance company alleging that the company's sales representative had misrepresented the features of an insurance policy that plaintiff bought. <u>Id.</u> at 189. The insurance policy had an integration clause stating that "[t]his policy includes any riders and, with the application attached

15

when the policy is issued, makes up the entire contract." Id. at 190.  The policy also set forth a "Limitation on Sales Representative's Authority," providing that "[n]o sales representative or other person, except our President, Secretary, or a Vice-President may (a) make or change any contract of insurance; or (b) change or waive any terms of this policy.  Any change must be in writing and signed by our President, Secretary, or Vice-President." Id.

The trial court held that the parol evidence rule barred plaintiff's misrepresentation-based claims.[13]  The appellate court reversed, reasoning that plaintiff's claims were actually for fraud in the execution of the insurance contract, not for fraud in the inducement, and therefore were not barred by the parol evidence rule. Id. at 193.  The Supreme Court of Pennsylvania affirmed the appellate court, stating as follows:

> Defendants have overlooked . . . that the [appellate court] found that Toy's fraud claims concerning the savings plan features that Defendants represented would be included in the parties' agreement amount to a claim of fraud in the execution of a contract, and that as such, demand a far different analysis than that applied to the fraud claim alleged by the plaintiffs in Yocca concerning representations in the SBL Brochure that induced them into entering into the SBL Agreement.

Id. at 206.

Therefore, the Supreme Court of Pennsylvania in Toy, like in Yocca, did not apply the parol evidence rule to bar a fraud in the inducement claim in the absence of an integration clause.  Rather, the court in Toy characterized plaintiff's claim as one for fraud in the execution, and held that it could go forward.  Moreover, the plaintiff in Toy, like the plaintiffs in Yocca, were attempting to explain or vary the terms of a written contract.  They alleged, in essence, that the contract did not conform to what they were promised.  In the present case, Plaintiffs are not

---

[13] In Toy, plaintiff alleged, inter alia, a claim of bad faith, and violation of the UTPCPL and the Pennsylvania Unfair Insurance Practices Act ("UIPA").  928 A.2d at 190-91.

seeking to explain or vary the terms of a contract.  Plaintiffs instead claim that Defendants'

factual representations regarding third parties induced them to enter into a contract.

The Third Circuit's decision in <u>Dayhoff Inc. v. H.J. Heinz Co.</u>, 86 F.3d 1287 (3d Cir.

1996), is also distinguishable from the present case.  In <u>Dayhoff</u>, plaintiff claimed that

defendants fraudulently induced it to include a termination clause in a distribution agreement by

misrepresenting the effect of the clause.  <u>Id.</u> at 1298-301.  Plaintiff averred that defendants said

that the termination clause was only designed to protect defendants in the event that plaintiff's

company was sold or its assets assigned.  <u>Id.</u> at 1291.  Defendants did not tell plaintiff that

defendants could also invoke the termination clause if defendants' business was sold.  <u>Id.</u>  The

distribution agreement contained an integration clause that stated as follows:

> The Agreement contains the entire understanding between the parties hereto with
> respect to the subject matter hereof.  All previous documents, undertakings and
> agreements with respect to this subject matter, whether verbal, written, or
> otherwise, between the parties are hereby cancelled and shall not affect or modify
> any of the terms or obligations set forth in this Agreement except by written
> agreement between the parties.

<u>Id.</u> at 1299 n.11.

The Third Circuit held that the parol evidence rule barred plaintiff's fraudulent

inducement claim because plaintiff was attempting to alter the express terms of the distribution

agreement.  <u>Id.</u> at 1300.  The court further explained that

> because the plain terms of [the termination clause] cannot be altered by
> [plaintiff's] factual claims of fraud in the inducement, even if [plaintiff's]
> assertions are true, we agree with the holding of the district court that the
> termination provision of the [distribution agreement] is binding on the parties.

<u>Id.</u>

In <u>Dayoff</u>, like in <u>Yocca</u> and <u>Toy</u>, the plaintiff was attempting to alter the terms of a

written contract.  In addition, the contract contained an integration clause disclaiming the parties'

previous representations.  For reasons discussed above, these factors distinguish <u>Dayhoff</u> from the present case.

The final decision that Defendants rely upon is <u>KDH Electronic Systems, Inc. v. Curtis Technology Ltd.</u>, 826 F. Supp. 2d 782 (E.D. Pa. 2011).  In that case, defendant asserted counterclaims alleging, <u>inter alia</u>, that plaintiff fraudulently induced defendant to enter into a contract regarding development of a sonar system by misrepresenting its intent to jointly develop the sonar system with defendant and to make its best efforts to select defendant as a subcontractor on any contract regarding the sonar system.  <u>Id.</u> at 802.  The contract contained terms that directly addressed these topics, and had an integration clause stating that the contract "is the complete agreement of the parties relating to the subject matter hereof."  <u>Id.</u> at 803.  The court dismissed this counterclaim based on the parol evidence rule, citing <u>Yocca</u>, <u>Toy</u>, and <u>Dayhoff</u>.  <u>Id.</u>  The court explained that under Pennsylvania law, "courts may not consider prior representations regarding matters covered in an integrated written contract unless the representations were fraudulently omitted from the contract."  <u>Id.</u>

In <u>KDH</u>, like in the cases discussed above, it appears that defendant attempted to vary or explain the terms of a written contract based on prior representations.  The contract also contained an integration clause.  In the present case, as described above, Plaintiffs are not seeking to vary or explain the terms of a written contract, and the contract does not contain an integration clause applicable to Defendants' alleged fraudulent representations and omissions.  Therefore, <u>KDH</u> also does not support Defendants' contention that the parol evidence rule bars Plaintiffs' fraud claims.

Accordingly, for the reasons discussed, Plaintiffs' fraudulent inducement claim here is distinguishable from the claims dismissed in <u>Yocca</u>, <u>Toy</u>, <u>Dayhoff</u>, and <u>KDH</u>.  Plaintiffs do not

seek to add to, subtract from, vary, or explain the terms of a contract.  Rather, they allege that Defendants' misrepresentations and omissions regarding then-existing facts about third parties constituted fraudulent inducement.  Additionally, there is no integration clause denying the existence of these alleged misrepresentations and omissions.  As such, Pennsylvania's parol evidence rule does not bar Plaintiffs' fraud in the inducement claim.

### B.   Defendants Are Not Entitled to Summary Judgment on the Negligent Misrepresentation Claim

Defendants contend that they are entitled to summary judgment on Plaintiffs' negligent misrepresentation claim because, in Pennsylvania, such claims are "limited to situations where the defendant accepts the role of advisor and provides guidance to the plaintiff." (Doc. No. 204 at 27.)  In support of this position, Defendants argue that the Supreme Court of Pennsylvania in Bilt-Rite Contractors v. The Architectural Studio, 866 A.2d 270 (Pa. 2005), adopted the Restatement (Second) of Torts § 552 as the only configuration of the tort of negligent misrepresentation under Pennsylvania law.  (Doc. No. 204 at 26.)  As noted, § 552 states in relevant part as follows:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> > (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

As Plaintiffs point out, the court in <u>Bilt-Rite</u> made clear that § 552 does not supplant the common law tort of negligent misrepresentation, but rather only serves to "clarify[] the contours of the tort as it applies to those in the business of providing information to others." <u>Bilt-Rite</u>, 866 A.2d at 287.  Pennsylvania's common law tort of negligent misrepresentation does not require that the tortfeasor be in the business of providing information to others.  It requires only proof of the following elements:

> (1) a misrepresentation of material fact; (2) made under circumstances in which the misrepresenter ought to have known of its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.

<u>Bilt-Rite</u>, 866 A.2d at 277 (internal quotations marks and citation omitted).  Accordingly, Defendants' argument that they are entitled to summary judgment on Plaintiffs' negligent misrepresentation claim because Defendants are not in the business of providing information to others is unavailing.

### C.  Defendants Are Not Entitled to Summary Judgment on the Fraudulent Concealment Claim

Defendants argue that they cannot be liable for fraudulent concealment because such claims are limited to situations where there is a confidential or fiduciary relationship between the parties.  (Doc. No. 204 at 12.)  However, where a party is accused of purposefully concealing information material to a transaction, no confidential or fiduciary relationship between the parties need exist for liability to be imposed.  Pennsylvania has adopted the Restatement (Second) of Torts § 550, which imposes liability for intentional concealment of material

information regardless of a duty to disclose.  See Youndt v. First Nat'l Bank of Port Allegany, 868 A.2d 539, 549 (Pa. Super. Ct. 2005).  Section 550 of the Restatement reads as follows:

§ 550.  Liability for Fraudulent Concealment

One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering.

"'In short, at common law, no fiduciary relationship, no statute, no other independent legal duty to disclose is necessary to make active concealment actionable fraud—simple 'good faith' imposes an obligation not to purposefully conceal material facts with intent to deceive.'" Gnagey Gas & Oil Co., Inc. v. Pennsylvania Underground Storage Tank Indemnification Fund, 82 A.3d 485, 502 (Pa. Commw. Ct. 2013) (quoting United States v. Colton, 231 F.3d 890, 900 (4th Cir. 2000)).  Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs' fraudulent concealment claim will be denied.

## D.  Defendants Are Not Entitled to Summary Judgment on the Promissory Estoppel Claim

Defendants next contend that they cannot be liable for promissory estoppel because agents cannot be liable for the promises of their principals.  (Doc. No. 204 at 29.)  They argue that "Defendants are alleged to have acted as agents for the landlord, in this case [APA].  Thus, any binding promise that RumJungle [or English Is Italian] would definitely be in The Pier must be deemed to be a promise by [APA], not its agents."  (Id. at 29-30.)

Defendants cite to no authority in support of this position, and their argument is without merit.  Under Pennsylvania law, "an agent . . . may be liable to an injured third party for his own deceit in a transaction on behalf of his principal."  Roberts v. Estate of Barbagallo, 531 A.2d 1125, 1130 (Pa. Super. Ct. 1987).  In Roberts, a real estate agent was held liable for fraudulent

21

concealment when it concealed from the buyer of a property the fact that the property contained a toxic form of insulation.  Id. at 1130-31.  The Court finds no reason to refrain from extending the logic of the Roberts court to the promissory estoppel context.  Defendants may be liable in promissory estoppel for their own allegedly deceitful promises regarding RumJungle and English Is Italian opening at The Pier.

## V.    CONCLUSION

For the reasons discussed, the parties' cross-motions for summary judgment (Doc. Nos. 204, 205) will be denied.  In addition, Count III alleging civil conspiracy will be dismissed.  An appropriate Order follows.